# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**MICHAEL HERZOG,**
**Claimant Below, Petitioner**

**FILED**

January 25, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 17-0312** (BOR Appeal No. 2051565)
(Claim No. 2014019892)

**COLE TRUCK PARTS INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

In workers' compensation law, a claimant is entitled to medically related and reasonably required treatment as long as the treatment is for an injury or disease sustained in the course of and resulting from employment. Michael Herzog was working for Cole Truck Parts Inc., when he tripped, fell, and injured his neck and head. We are asked to decide whether an office visit with John Orphanos, M.D., and a cervical discectomy should be authorized. After a thorough review of the evidence of record, we find that the treatment is reasonably required and medically necessary. We therefore reverse the Board of Review's decision and authorize the treatment. We also find, after consideration of the parties' briefs and evidentiary record, that the decisional process would not be significantly benefitted by oral argument. We find no substantial question of law or prejudicial error. Therefore, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Herzog was injured when he tripped and fell face first into a door jam. An x-ray from Bluefield Regional Medical Center taken the day of the injury showed advanced spondylosis, spinal canal and neural foraminal stenosis, straightening of the normal cervical lordosis, and no findings of acute osseous abnormalities. The employee's and physician's report of injury indicates Mr. Herzog slipped and tripped on an entrance rug and fell head first into a door frame. The diagnoses were head abrasion and cervical sprain/strain. The claim was held compensable for cervical sprain/strain and headaches.

A CT scan from Community Radiology of Virginia showed osteopenic bones, a displaced subacute fracture at C2, widening between the arch of C1, a C1 arch fracture, mild narrowing of the thecal sac due to the fracture, and severe degenerative disc disease from C3-C6. An x-ray indicates an anterior subluxation of the C1-2 articulation. The claims administrator authorized cervical fusion from occipital to C1-2 or C2-3. The surgery was performed by Dr. Orphanos, and cervical fracture at C1-2 was added to the claim.

1

A CT scan taken after the surgery showed a non-united odontoid process fracture with surgical fixation, disc osteophyte complexes from C3 through C7 with moderate spinal canal stenosis and deformation of the spinal cord at C4-5, and multilevel neuroforaminal impingement. Mr. Herzog was seen by P. Kent Thrush, M.D., who reviewed the medical records and did not recommend any type of cervical surgery at C5. He noted that the findings seen at C5 are preexisting degenerative changes.

Five months later, Dr. Orphanos diagnosed cervical radiculopathy and persistent upper extremity pain secondary to radicular disease at C4-5. Mr. Herzog received an injection several months prior that provided relief of the cervical radiculopathy symptoms. This was therefore indicative of a C5 radiculopathy. Dr. Orphanos recommended surgery and Mr. Herzog agreed.

In an independent medical evaluation, Joseph Grady, M.D., assessed status post posterior C1-2 fusion for vertebral fractures. He noted that Mr. Herzog still had persistent problems with neck discomfort associated with cervical spondylosis that was noted on his CT. On the CT there was some stenosis and deformation of the spinal cord at C4-5. Mr. Herzog had a nerve root block at C5 suggesting some radiculopathy, which is attributable to the structural abnormality at C4-5 and would correspond to the advanced spondylosis noted on initial x-rays. Dr. Grady opined that he could not specifically attribute the C4-5 fusion to the compensable injury. He found that the condition was due to advanced spondylosis. He found Mr. Herzog to be at maximum medical improvement.

Mr. Herzog underwent a C4-5 discectomy and fusion for the diagnosis of herniated C4-5 disc in December of 2015. Two weeks later, Dr. Orphanos indicated in a treatment note that he was doing well post C4-5 fusion. An x-ray showed stable hardware at C1-2, normal alignment, and chronic degenerative changes with disc space narrowing at C5-6 and C6-7.

The claims administrator denied authorization for a C4-5 anterior cervical discectomy/fusion and an office visit with Dr. Orphanos. The Office of Judges affirmed the decisions. It found that Dr. Orphanos recommended a C4-5 fusion to treat radiculopathy; however, the condition has never been held compensable in this claim, nor has any disc abnormality at C4-5. West Virginia Code of State Rules § 85-20-35.4b (2006) provides that operative treatment is inappropriate for a cervical strain and Mr. Herzog has exceeded the estimated duration of care for his compensable cervical sprain/strain. He failed to show that this is an extraordinary case that would entitle him to treatment beyond the guidelines. The Office of Judges found that in his evaluation, Dr. Grady found that the cervical discectomy and fusion may be appropriate for the structural abnormality at C4-5 but he could not specifically associate the C4-5 condition with the compensable injury. Both Drs. Thrush and Grady considered Mr. Herzog's preexisting degenerative findings to be unrelated to the compensable injury, whereas Dr. Orphanos failed to clearly explain how the requested surgery relates to the compensable injury rather than to the preexisting degenerative disc disease. Lastly, the Office of Judges found that Dr. Orphanos's notes indicate the pain associated with the C4-5 conditions began around May of 2014, five months after the compensable injury occurred. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order.

On appeal before this Court, Mr. Herzog argues that his injury was so severe that his first cervical surgery was authorized by the claims administrator. He asserts that Dr. Orphanos, the treating neurosurgeon, is in the best position to determine the necessity of the surgery. Cole Truck Parts argues that the evidence clearly shows that the surgery and office visit are not related to the compensable injury. The claim is only compensable for cervical sprain/strain and C2 fracture, which was surgically repaired. It asserts that no explanation has been offered relating the C4-5 surgery to the compensable injury. Lastly, it argues that the requested surgery is outside of the treatment guidelines set forth in West Virginia Code of State Rules § 85-20 (2006).

After review of the evidence and consideration of the parties' arguments, we disagree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Herzog has shown that the requested treatment is reasonably required and medically necessary per the opinion of his treating neurosurgeon, Dr. Orphanos. We therefore find that the decision of the Board of Review is the result of misstatements or mischaracterizations of the evidentiary record. The case is reversed and remanded with instructions to authorize a C4-5 anterior cervical discectomy/fusion and an office visit with Dr. Orphanos.

Reversed and Remanded.

**ISSUED: January 25, 2018**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENTING:**
Chief Justice Allen H. Loughry II
Justice Elizabeth D. Walker

LOUGHRY, Chief Justice, dissenting:

I dissent to the majority's decision to authorize the claimant's requests for C4-5 anterior cervical discectomy/fusion and a December 10, 2015, office visit with Dr. Orphanos. The record shows that the claimant tripped on a rug and hit his head on a door frame. The claim was initially held compensable for a cervical sprain/strain and headaches. Cervical fracture at C1-2 was later added as another compensable diagnosis. However, the C4-5 condition, which Dr. Orphanos diagnosed as radiculopathy, has never been associated with the compensable injury, and the two doctors who have performed independent medical evaluations have opined that the structural abnormality at C4-5 is attributable to pre-existing degenerative changes. Even Dr. Orphanos, who diagnosed the C4-5 condition, has failed to explain how the requested surgery is related to the compensable injury. In fact, Dr. Orphanos's treatment notes state that the pain associated with the C4-5 condition began five months after the compensable injury occurred. Moreover, the

3

workers' compensation regulations provide that operative treatment is not appropriate for a cervical strain. West Virginia code of State Rules § 85-20-35.4b (2006).

Based on all the evidence discussed above, the claims administrator, the Office of Judges, and the Board of Review concluded that the claimant failed to show by a preponderance of the evidence that his C4-5 condition is related to the compensable injury and denied authorization for the requested surgery and office visit. West Virginia Code § 23-5-15(c) (2017) provides, in pertinent part:

> *If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim*, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. *The court may not conduct a de novo re-weighing of the evidentiary record.*

(Emphasis added). Because it is clear that the majority has simply re-weighed the evidence to find in favor of the claimant, I respectfully dissent.